E-FILED
Tuesday, 02 September, 2014 11:55:58 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| GARDNER DENVER, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 13-3040 |
| ) | |
| DISTRICT NO. 9 LOCAL LODGE ) | |
| 822, INTERNATIONAL ) | |
| ASSOCIATION OF MACHINISTS ) | |
| AND AEROSPACE WORKERS, ) | |
| ) | |
| Defendant. ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Pending is the Defendant's Motion for Summary Judgment. Pending also is the Plaintiff's Cross-Motion for Summary Judgment.

## I. INTRODUCTION

Plaintiff Gardner Denver, Inc. ("the Plaintiff" or "the Company") filed a Complaint for Declaratory Judgment against Defendant District No. 9 Local Lodge 822, International Association of Machinists and Aerospace Workers ("the Defendant" or "the Union"). The dispute concerns changes to retiree medical benefits for current retirees of the Company and whether

they are within the scope of the parties' collective bargaining agreement (CBA) or are arbitrable under the contractual grievance procedure.

The Union filed a Counterclaim to Compel Arbitration. It seeks summary judgment on Count I of its Counterclaim to compel the Plaintiff to arbitrate a dispute over retiree medical benefits pursuant to the parties' CBA.

## II. FACTUAL BACKGROUND

The Company is an employer engaged in an industry affecting commerce within the meaning of 29 U.S.C. §§ 142 and 152. The Union is a labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. §§ 142 and 152. The Parties have had a collective bargaining relationship for over 60 years. The Union and the Company are parties to a CBA, effective May 6, 2012, to which both parties are bound.

Prior to 1991, the Company provided a retiree benefits package governed by the Gardner Denver Retiree Medical Plan. The medical plan included, among other things, an agreement to pay the majority of the

insurance premiums.

Article 12 Section 12.5 of the CBA reads as follows:

## RETIREE MEDICAL PHASE OUT AND SUPPLEMENTAL IARP CONTRIBUTION PLAN

Effective October 1, 1991, for employees who turn 49 or less in 1991 and are employed prior to May 1, 1991, eliminate medical insurance coverage at retirement and add the following contributions to their Individual Retirement Plan on a weekly basis for any week in which the employee has contribution hours under the Plan:

| Age Turned In 1991[1] | Weekly Contribution |
|---|---|
| 25 or younger | $2.31 |
| 26 | $2.54 |
| 27 | $3.00 |
| 28 | $3.46 |
| 29 | $3.92 |
| 30 | $4.38 |
| 31 | $4.85 |
| 32 | $5.31 |
| 33 | $5.77 |
| 34 | $6.23 |
| 35 | $6.69 |
| 36 | $7.15 |
| 37 | $7.85 |
| 38 | $8.54 |

---

[1]The year the change becomes effective.

| | |
|---|---|
| 39 | $9.23 |
| 40 | $10.15 |
| 41 | $11.08 |
| 42 | $12.00 |
| 43 | $12.46 |
| 44 | $13.85 |
| 45 | $15.00 |
| 46 | $16.15 |
| 47 | $17.31 |
| 48 | $18.46 |
| 49 | $20.77 |

>No change for those retired prior to October 1, 1991, and no supplementary pension contributions or retiree medical for employees hired after May 1, 1991.

Accordingly, this bargained-for change in medical plans only affected current and future employees, and did not alter the Medical Plan, which remained in place for the then-current retirees.

According to the Comprehensive Retiree Medical Plan dated April 2008, "[t]he amount of Medical Plan contribution being paid by retirees is as set forth in the letter [retirees] received at retirement, or as set forth in the letter you received in January 2007." It further provides that "[t]his contribution amount may be changed in the future. The company reserves the right to adjust Retiree Medical Plan contributions if the future cost of

claims changes. You will be notified of any adjustment to the amount of your Medical Plan Contributions."

Disputes over Article 12 Section 12.5 are arbitrable under Article 5 of the grievance procedure. Section 5.1 of the CBA provides: "A grievance is a dispute or difference of opinion between the Company and the Union, or between the Company and an employee(s) concerning the breach, violation, meaning or application of any of the terms or conditions of this Agreement." When disputes are not otherwise resolved, CBA Section 5.1 provides: "the grievance may be submitted to arbitration as hereinafter provided if a written request to arbitrate is submitted to the Company no later than ten working days after the Company's decision is given." This CBA Section further provides: "The Arbitrator may consider and decide only the particular issue or issues presented in writing by the Company and the Union and the decision must be based solely upon an interpretation of the provisions of the Agreement. The Arbitrator shall not amend, take away, add to, or change any of the provisions of this Agreement."

Article 1 of the CBA provides: "The Company recognizes the Union

as the sole collective bargaining agency for all the above named employees." The above named individuals include: "all production and maintenance employees of the Company in Quincy, Illinois, except office workers, sales force, area managers, supervisors, timekeepers, watchmen, guards, and employees of the engineering department."

In a letter dated October 24, 2012, the Plaintiff sent notices to participants in the retiree medical plan that as of January 1, 2013, retirees will be required to pay 50 percent of the costs of retiree health benefits and as of January 1, 2014 retirees will be required to pay 100 percent of the health insurance premium. Until the Company unilaterally changed retiree medical benefits, those who retired prior to October 1, 1991 were only required to pay $30.00 per month until they became Medicare eligible. The change affected those who retired before 1991.

The CBA provides, in pertinent part, that the Union is the "sole collective bargaining agency" for "all production and maintenance employees of the Company in Quincy, Illinois, except office workers, sales force, area managers, supervisors, time-keepers, watchmen, guards, and

employees of the engineering department." The parties dispute whether the Union is recognized in the CBA as the bargaining agent for retirees of the Company.

On December 5, 2012, the Defendant filed a grievance protesting the Plaintiff's unilateral decision to change retiree medical coverage, asserted that this change violates Section 12.5 of the CBA, and demanded the Company make whole any losses due to the Company's failure to follow the CBA. In a letter dated December 21, 2012, the Company denied the Union's grievance. Subsequently, the Union demanded arbitration pursuant to the grievance procedure in the CBA. In response, the Company refused to arbitrate and, on February 20, 2013, verbally informed the Union that the Company intended to litigate the issue in Court.

The grievance procedure set forth in the CBA applies to disputes or differences concerning the "breach, violation, meaning or application of any of the terms or conditions of this Agreement." The parties dispute whether such "terms or conditions" of the CBA apply only to bargaining employees. The CBA does not explicitly and unmistakably reserve a determination as

to whether a dispute is a proper subject of the grievance procedure for exclusive resolution.

The authority of the arbitrator is limited as follows: "The Arbitrator may consider and decide only the particular issue or issues presented in writing by the Company and the Union and the decision must be based solely upon an interpretation of the provisions of the Agreement. The Arbitrator shall not amend, take away, add to, or change any of the provisions of this Agreement."

The CBA and the Company's bargaining obligations relate to current employees. To the extent the Company is claiming the CBA does not relate to retirees, the Union disputes any such suggestion. The parties further dispute whether the Company has ever negotiated an agreement with the Union related to retiree medical insurance coverage of premiums applicable to individuals who, at the time of the agreement, were retirees of the Company.

The Plaintiff filed its Complaint in this case. The Defendant states that Jesse Stone, who is retired from the Company, and his spouse Betty

Stone have signed declarations giving consent to the Union to arbitrate this retiree medical plan dispute on their behalf.

The Plaintiff disputes the Defendant's assertion that no provision of the CBA or any other agreement with the Union, or the Medical Plan, grants the Union the authority to negotiate or bring a grievance on behalf of current retirees with respect to insurance benefits or premiums.

## III. DISCUSSION

### A. Summary judgment standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). The Court construes all inferences in favor of the non-movant. See Siliven v. Indiana Dept. of Child Services, 635 F.3d 921, 925 (7th Cir. 2011). When cross-motions are being considered, the Court construes "all inferences in favor of the party against whom the motion under consideration is made." Hendricks-Robinson v. Excel Corp., 154 F.3d 685, 692 (7th Cir. 1998). To create a genuine factual dispute, however, any such inference must be

based on something more than "speculation or conjecture." See Harper v. C.R. England, Inc., 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted).

B. Arbitrability of dispute

If an agreement includes an arbitration clause, there is a presumption in favor of arbitrability. See Exelon Generations Co. v. Local 15 Int'l Brotherhood of Electrical Workers, 540 F.3d 640, 646 (7th Cir. 2008). "[A]rbitration is favored and should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Niro v. Fearn Int'l, Inc., 827 F.2d 173, 175 (7th Cir. 1987) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)). This is particularly true if the arbitration provision is broad. See Exelon, 540 F.3d at 646. In such instances, "only an 'express provision excluding a particular grievance from arbitration . . . [or] the most forceful evidence of a purpose to exclude the claim from arbitration' can keep the claim from arbitration." Id. (quoting Warrior & Gulf, 363 U.S. at 584-85).

Based on the presumption in favor of arbitrability, the Union

contends this case must be referred to arbitration. The Defendant alleges that the broad CBA language should be interpreted as evincing the parties' intent to arbitrate disputes over retiree medical benefits. The Union further asserts it has the right to arbitrate disputes on behalf of retirees. It does not appear there is any language specifically excluding the retiree benefit provisions of the CBA from the grievance procedure. Because the CBA applies not only to employees but also members of "the Union," it can be interpreted to include retirees. See Exelon, 540 F.3d at 645-46.

The Union claims that an arbitrator possibly could interpret the CBA by finding that the Employer violated its terms by unilaterally reducing retiree medical benefits. Because the arbitration clause is susceptible to that interpretation, the Defendant contends that the Court should order arbitration.

Upon reviewing the record, however, the Court concludes that the dispute over retiree benefits for then-existing retirees does not involve an interpretation of Article 12 Section 12.5 of the CBA. Rather, it involves an interpretation of the Medical Plan which is not a part of the CBA. The

11

2012 CBA requires arbitration over the grievances related to "breach, violation, meaning or application of any of the terms or conditions of this Agreement." The "Retiree Medical Phase Out And Supplemental IARP Contribution Plan" applied to employees who were employed prior to May 1, 1991 and who turned 49 or less in 1991. Its effect was to eliminate medical insurance coverage at retirement and add weekly contributions to the employees' Individual Account Retirement Plan for any week in which the employee has contribution hours under the plan. The amount of the weekly contribution depended on the age of the individual in 1991.

Given this context, the phrase "No change for those retired prior to October 1, 1991" simply highlights the fact that this phase out applied to employees who turned 49 or less in 1991, and not to union members who had retired before that date. Because the phase out applied to employees within a certain age range and not to retired employees, it resulted in no change to the latter group of individuals. Accordingly, the phrase cannot reasonably be interpreted to pertain to a reduction in benefits for retired employees. Because this provision does not apply to retiree benefits, the

Court concludes no interpretation of this portion of the CBA is necessary. The dispute between the parties regarding retiree benefits for those who retired prior to 1991 is not implicated in the CBA.

Although the CBA addresses Retirement Plans for current employees, including the amount the Plaintiff agreed to contribute, the parties did not bargain for and the CBA does not substantively address the benefits of those who retired prior to 1991. Because the Company has not agreed to bargain for retiree benefits, the Union has no authority to bargain on behalf of retirees for such benefits. See Rossetto v. Pabst Brewing Co., Inc., 128 F.3d 538, 540 (7th Cir. 1997). Accordingly, the Court is unable to conclude that the arbitration provision contained in Section 5.1 applies to this dispute.

Contrary to the Defendant's argument, Exelon does not compel a different result. A key difference between this case and Exelon is that in the latter case, the CBA created the retirees' rights to medical benefits. See Exelon, 540 F.3d at 645. In Rossetto, moreover, the CBA provided for retiree benefits. See Rossetto, 128 F.3d at 538. Because the grievance

procedure applied to disputes between Exelon and the "Union or its members" and there was a dispute over the retiree medical benefit provisions of documents which became part of the CBA, the Seventh Circuit applied the presumption of arbitrability and determined the company had consented to arbitrate disputes over retiree benefits. See Exelon, 540 F.3d at 646-47. In Rossetto, the presumption of arbitrability did not carry the day because the arbitration provision in the CBA applied to grievances between the "Company and its employees." See Rossetto, 128 F.3d at 539-40.

Here, although the CBA applies to members of the Union, the issue of benefits for those who retired prior to 1991 is not addressed therein. Only retiree benefits for then-current employees are bargained for in the CBA. In Cleveland Elec. Illuminating Co. v. Utility Workers Union of America, 440 F.3d 809 (6th Cir. 2006), the Sixth Circuit held that the "presumption of arbitrability applies to disputes over retirees' benefits if the parties have contracted for such benefits in their collective bargaining agreement and if there is nothing in the agreement that specifically excludes

14

the dispute from arbitration." See id. at 816. There are no provisions in the CBA suggesting that the parties bargained over the benefits of pre-1991 retirees. Accordingly, the Court concludes that the presumption of arbitrability does not apply in this case.

The benefits of pre-1991 retirees are governed by the Medical Plan. The Medical Plan includes a reservation of rights provision which provides that "[t]his contribution amount *may be changed in the future*. The company reserves the right to adjust Retiree Medical Plan contributions if the future cost of claims changes." (Emphasis in original).

Because the dispute concerns the interpretation of the reservation of rights provision in the Medical Plan, and not a provision of the CBA, the Court concludes that it is not within the scope of the arbitration provision of the CBA.

Based on the foregoing, the Court declines to compel arbitration on Count 1 of the Defendant's Counterclaim.

<u>Ergo</u>, the Defendant's Motion for Summary Judgment [d/e 15] is DENIED.

The Plaintiff's Cross-Motion for Summary Judgment [d/e 23] is ALLOWED.

The Court concludes that the dispute between the Parties is not subject to arbitration.

The Court notes that there was a discovery dispute between the parties while the summary judgment motions were pending. Discovery was stayed pending resolution of the summary judgment motions. Accordingly, this case is referred to United States Magistrate Judge Tom Schanzle-Haskins to address any discovery issues in light of the Court's ruling.

ENTER: September 2, 2014

    FOR THE COURT:

                                  s/Richard Mills
                                  Richard Mills
                                  United States District Judge